CLARENCE H. GUILD, Exr., et al., vs. FRANCES F. ALLEN et al.

JUNE 7, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Wills. Description of Legatee.*

Testamentary bequest: "To the Woman's Baptist Foreign Missionary Society, connected with the First Baptist Church of Providence, R. I., to be devoted to the branch of work in which ' X.' is engaged."

No such society was connected with the church, but there was an unincorporated voluntary association called the "Woman's Foreign Missionary Association," whose object was "To aid the missions under the direction of the American Baptist Missionary Union," and whose money was sent through the treasury of the "Woman's Baptist Missionary Society," which latter society was a Massachusetts corporation whose name had been changed to the "Woman's Baptist Foreign Missionary Society" and whose leading object was to furnish support, through the American Baptist Missionary Union, to women employed as missionaries. The branch of work in which "X." was engaged was a branch of work of the American Baptist Missionary Union supported by funds received by the Woman's Baptist Foreign Missionary Society. Funds received from the Woman's Foreign Missionary Association of the First Baptist Church were appropriated by the Woman's Baptist Foreign Missionary Society to its general work, in which the work of "X." was included. There was no other organization connected with said church with an object similar to that of the Woman's Foreign Missionary Association, and said association had continuously sent its money through the Woman's Baptist Foreign Missionary Society:—

*Held,* that the association could be clearly identified by the testamentary description, aided by the pleadings and statement of facts, as the one intended by testatrix.

(2) *Wills. Description of Legatee.*

Testamentary bequest: "To the Home Missionary Society of the First Baptist Church of Providence." There was no such society, but the Woman's Baptist Home Mission Society of said church was an unincorporated voluntary association whose constitution stated that it should be auxiliary to the Woman's American Baptist Home Mission Society of Boston, a Massachusetts corporation, and that it should cultivate interest in the work of Home Missions. The object of said Woman's American Baptist Home Mission Society was the evangelization and education of women and children in any part of North America:—

*Held,* that the Woman's Baptist Home Mission Society was clearly identified as the society intended by testatrix.

*Held,* further, that in the first bequest the executor would be authorized to pay over the legacy to the corporation, the Woman's Baptist Foreign

Missionary Society, upon receipt of an agreement from its executive officers that the same should be expended as directed in the will.

*Held,* further, that in the second bequest it was a donation to an unincorporated society by name, which was in legal effect a gift to the individuals calling themselves by that name, and the gift not being expressed to be in trust, nor impressed with any use charitable or otherwise, it was absolute and unconditional; therefore the executor would fulfill the direction of the will by paying the legacy to the persons composing this society, or to any agent whom they should authorize to receive it.

(3) *Voluntary Associations as Trustee.*

In dealing with unincorporated voluntary associations, while there is nothing to prevent their receiving and holding property in common as individuals, they can not in their aggregate name, as an organization, hold real estate or act as trustee; but where a legacy to such an association is for a charitable purpose, and the association is only intrusted with the duty of transmitting it to the ultimate beneficiary, the incapacity of the trustee named to act is immaterial and the court will appoint a suitable trustee.

(4) *Wills. Substitution.*

Testamentary bequest: "I give and bequeath one thousand dollars to the four daughters of 'X.,' to be equally divided among them or their children at the time of my death."

One of the daughters of "X." died prior to decease of testatrix, leaving two children surviving her.

*Held,* that the children of the deceased daughter took the inheritance *per stirpes,* coming in by substitution.

(5) *Dry Trusts.*

Testamentary bequest: "I give and bequeath to 'X.' five hundred dollars, to be kept in trust for her by her daughter 'Z.'"

*Held,* that the bequest amounted to a dry trust, and "X." was entitled to the legacy free from any trust.

BILL IN EQUITY for construction of will.

JOHNSON, J. Bill in equity for the construction of the will of Julia B. Stoughton, late of Providence, deceased.

Said Julia B. Stoughton died on the 17th day of June, A. D. 1905, leaving a last will and testament executed May 1, 1895, with two codicils, the first dated March 18, 1903, and the second dated March 2, 1905, which were duly offered for probate and proved in the Municipal Court of the city of Providence.

It is agreed that the complainants and respondents named in the bill are the only persons interested in the property and

estate of which said testatrix was seized and possessed at the time of her decease.

The provisions of said will and codicils upon the construction of which questions have arisen are as follows: The fourth and eighth paragraphs of the will, the first and second paragraphs of the first codicil, and the first paragraph of the second codicil. As the legacies given by the fourth paragraph of the will and the first paragraph of the first codicil are both to unincorporated societies, they may for convenience be considered together.

(1) The fourth paragraph of said will reads: "I give and bequeath the sum of ($1,000) one thousand dollars to the 'Woman's Baptist Foreign Missionary Society,' connected with the First Baptist Church of Providence, R. I., in memory of my mother, Mrs. C. G. Burlingame, to be devoted (if rulable) to the branch of work in which Miss Elizabeth Lawrence of Burmah is engaged."

From the bill, answer, and agreed statement of facts it appears that there is no "Woman's Baptist Foreign Missionary Society" connected with the First Baptist Church of Providence, but that there is an unincorporated voluntary association, connected with said church, called the "Woman's Foreign Missionary Association," which is organized with a constitution which states its object to be "To aid the missions under the direction of the American Baptist Missionary Union;" and that on the 14th day of October, 1871, the Woman's Foreign Missionary Association of the First Baptist Church, by a vote at a regular meeting, directed that its money, unless otherwise ordered, should be sent through the treasury of the Woman's Baptist Missionary Society; that the Woman's Baptist Missionary Society was organized in April, 1871, and incorporated, under the laws of the State of Massachusetts, November 9, 1874, and in 1883 its charter was amended, by act of the General Court of Massachusetts, so that its name was changed to that of the "Woman's Baptist Foreign Missionary Society;" that the leading object of said society, as defined by article 2 of its by-laws, is "the Christianization of women in foreign lands;" that article 3 of its said by-laws provides "This object it shall seek to accomplish, as far as possible, by furnishing

support, through the American Baptist Missionary Union, to
Christian women employed by said union as missionaries,
native teachers, or Bible readers, together with the facilities
needed for their work; such laborers being recommended by
this society;" that the branch of work in which Elizabeth
Lawrence of Burmah is engaged is a branch of work of the
American Baptist Missionary Union, supported by the funds
received by the Woman's Baptist Foreign Missionary Society
as a part of its regular work; that funds received from time to
time from the Woman's Foreign Missionary Association of the
said First Baptist Church are, unless otherwise specifically
designated, appropriated by the Woman's Baptist Foreign
Missionary Society to its general work, in which the work of the
said Elizabeth Lawrence is included, and such funds paid into
the treasury for specially designated purposes are appropriated
as designated.    It also appears that there is no other organiza-
tion connected with said First Baptist Church with an object
similar to that of said Woman's Foreign Missionary Association,
and that said association has continuously sent, and now sends,
its money through the Woman's Baptist Foreign Missionary
Society.

The Woman's Foreign Missionary Association of the First
Baptist Church claims said bequest.    We think that the asso-
ciation can be clearly identified by the testamentary descrip-
tion, aided by the pleadings and the agreed statement of facts,
as the one intended by the testatrix.    She has substituted for
its name the name of the corporation through which it sends
the funds it receives to the foreign field, viz., the Woman's Bap-
tist Foreign Missionary Society, which, among other branches
of work, supports the work in Burmah of the Elizabeth Law-
rence mentioned in said bequest, but has described the society
as "connected with the First Baptist Church of Providence,
R. I."

(2)     The first paragraph of the first codicil reads:

"I give and bequeath to the Home Missionary Society of
the First Baptist Church of Providence, R. I., one thousand
($1,000) dollars."

It appears that there is no "Home Missionary Society" of

the First Baptist Church of Providence, but that the Woman's Baptist Home Mission Society of the First Baptist Church of Providence, R. I., is an unincorporated voluntary association, organized in 1901, with a constitution which states that it shall be auxiliary to the Woman's American Baptist Home Mission Society of Boston. The Woman's American Baptist Home Mission Society of Boston is a corporation under the laws of Massachusetts.

Article II of the constitution of said Woman's Baptist Home Mission Society of said First Baptist Church provides:

"The object of this Society shall be to cultivate interest in the work of Home Missions; and to induce every woman connected with the church to give something to help forward the work of uplifting the freed people, the Indians, the Alaskans, the Mexicans, the Cubans and the Porto Ricans. Also to evangelize the emigrant population which is so rapidly filling our country."

It further appears that the object of said Woman's American Baptist Home Mission Society, as shown by its charter, is the evangelization and education of women and children in any part of North America.

It is also agreed that there is no other organization connected with said First Baptist Church with an object similar to that of the Woman's Baptist Home Mission Society.

From the testamentary description, the pleadings, and agreed statement of facts, we think the "Woman's Baptist Home Mission Society of the First Baptist Church of Providence, R. I." is clearly identified as the society intended by the testatrix. These two societies are entitled to the legacies made to them, respectively, by the fourth paragraph of the will and the first paragraph of the first codicil, if the societies are capable of taking them.

(3) In dealing with organizations like these the law considers them as aggregations of individuals, not as artificial persons. They must sue and be sued, on occasion, as a partnership must, in the names of the constituent members, except as otherwise provided by statute. But there is nothing in the law to prevent their receiving and holding property in common as in-

dividuals. Such an association can not, however, in its aggregate name as an organization, hold real estate or act as trustee. These elementary principles are sufficient to decide the question before us.

The legacy given by the fourth paragraph of the will is for a clearly defined charitable purpose. The voluntary association which is named as legatee is only intrusted with the duty of transmitting it to the ultimate beneficiary. In such a case the incapacity of the trustee named to act is immaterial, and the court will always appoint a suitable trustee. In this case it appears that the work which the testatrix designates as the object of her gift, *i. e.*, the work in which Elizabeth Lawrence of Burmah is engaged, is a branch of work of the American Baptist Missionary Union, supported by the funds received as a part of its regular work by the Woman's Baptist Foreign Missionary Society, a corporation located in Boston, Massachusetts; that funds received from time to time from the Woman's Foreign Missionary Association of the First Baptist Church are, unless otherwise specifically designated, appropriated by said Woman's Baptist Foreign Missionary Society to its general work, in which the work of the said Elizabeth Lawrence is included, and such funds paid into the treasury for specially designated purposes are appropriated as designated. We will therefore advise the executor to pay over the legacy to said corporation, the Woman's Baptist Foreign Missionary Society, upon receipt of an agreement from its executive officers that the same shall be expended as directed in the will.

The legacy in the first paragraph of the first codicil is a donation of a sum of money to an unincorporated society by name. That is, in legal effect, a gift to the individuals calling themselves by that name. The gift is not expressed to be in trust, nor impressed with any use charitable or otherwise. We can only conjecture, from the fact that the organization is bound together by certain rules which state its object, that the testatrix expected the gift to be used for the promotion of those objects. The gift is absolute and unconditional. The executor will fulfill the direction of the will if he pays the legacy to the

persons composing this society, or to any agent whom they shall duly authorize to receive it.

The eighth paragraph of the will reads:

"If by reason of shrinkage in value, or from any other reason, the property of which I shall be seized and possessed at my death, shall not be sufficient to pay debts and legacies, and provide for perpetual care of burial lot, together with a reasonable compensation for services of Executor, I hereby order and direct that the sixth bequest be proportionately reduced to make up the deficiency."

There is no sixth bequest in said will, there being only four bequests in all. It has been suggested that the reference is to the sixth paragraph, which is the residuary clause of the will. In that event it would only provide for that which would take place by operation of law, and would therefore be of no effect.

The second paragraph of the first codicil reads:

"I give and bequeath (1,000) one thousand dollars to the four daughters of my dear friend, 'Mrs. Augusta Brown' of Baltimore, Md., to be equally divided among them or their children, at the time of my death."

Jane Brown McNew, one of the daughters of said Mrs. Augusta Brown at the time of the making of said first codicil, having died prior to the decease of the testatrix, leaving surviving her two infant children, the following question is propounded: "By virtue of said paragraph is said executor authorized to pay over the share of said one thousand dollars, to which said Jane B. McNew would have been entitled, had she survived said testatrix, to her said minor children, Lee Albion McNew and Lewis Browne McNew, or is each of said minor children entitled to one-fifth part of said legacy in said paragraph mentioned?"

In general, where a gift is to the children of several persons or to several persons and the children of another person, they take *per capita* and not *per stirpes*. Where, however, the gift is to several persons or their children, the children will generally take *per stirpes*, the gift to them being substitutional. In *Price* v. *Lockley*, 6 Beav. 180, the bequest was to the wife for life and then to the testator's "four children, the survivor or

survivors of them equally or to their heirs lawfully begotten."
One child had died before the termination of the life estate. It
was held that the children of such deceased child took one-
fourth by substitution.

In *Timins* v. *Stackhouse*, 27 Beav. 434, the language in
question was: "After my daughter Charlotte's death, I give the
above money to be divided as follows:   to her sister Anna
Maria 100£ a year, and all the rest to be divided between her
other brothers and sisters or their children." Held that the
grandchildren of the testator who survived their parents took
by substitution and *per stirpes*. *Burrell* v. *Baskerfield*, 11
Beav. 525; *Appeal of Fissel*, 27 Pa. St. 55; Jarman on Wills,
Vol. 2, 6th ed. top p. 207, *1051; 3 Probate Reports, Anno.
225, note and cases cited.

In the bequest under consideration, if the daughters of Mrs.
Augusta Brown had all been living, each would have taken *per
capita*; but the death of one before the distribution involves
a change in the scheme of distribution, and the children of the
deceased daughter take the inheritance *per stirpes*, that is, they
come in by substitution and divide between themselves the one-
quarter interest that would have gone to their mother.

The first paragraph of the second codicil reads:

(5)   "I give and bequeath to my cousin, Mrs. Frances Fitch Allen,
of Utica, N. Y., the sum of five hundred dollars, to be kept
in trust for her by her daughter, S. Edith Allen."

The question propounded by the complainant is whether,
by virtue of said paragraph, said executor is authorized to pay
over to said Frances Fitch Allen directly the legacy of five
hundred dollars mentioned in said paragraph, or is required to
pay it over to said S. Edith Allen in trust for said Frances
Fitch Allen.

The result of the cases in respect of those trusts which are
not executed by the statute of uses is this: If any agency,
duty, or power be imposed on the trustee, as by a limitation
to a trustee and his heirs to pay the rents, or to convey the es-
tate, or if any control is to be exercised, or duty performed,
by the trustee in applying the rents to a person's maintenance,
or in making repairs, or to preserve contingent remainder, or

to raise a sum of money, or to dispose of the estate by sale, in all these, and in other and like cases, the operation of the statute is excluded and the trusts or uses remain mere equitable estates.   So, if a trustee is to exercise any discretion in the management of an estate, or in the investment of the proceeds or the principal, or in the application of the income; or, if the purpose of the trust is to protect the estate for a given time, or until the death of some one, or until division, or until a request for a conveyance is made.   7 Pro. Anno. 589;  Perry on Trusts, § 305;  *Kreb's Estate,* 184 Pa. St. 222, 225;  *Story* v. *Palmer,* 46 N. J. Eq. 1;  *Simmons* v. *Richardson,* 107 Ala. 697;  *Pugh* v. *Hayes,* 113 Mo. 424;  *Gerard* v. *Buckley,* 137 Mass. 475;  *Moorhead's Estate,* 180 Pa. St. 119.

Where an estate is limited to a trustee to permit and suffer another to have the rents, the statute of uses vests the legal estate in such other person, because the trustee has no duties to perform.   *Pugh* v. *Hayes, supra.*

Where there is nothing to be done by the trustees, who merely hold the property for certain named beneficiaries for their own proper use, it amounts to a dry trust, and is executed by the statute.   *Everts* v. *Everts,* 80 Mich. 222.   And where a will gave "to my nephew and adopted son, the sum of $3,000, in trust to my executors," held, that the legacy went to the adopted son absolutely, free from any trust.   *Matter of Denfield,* 156 Mass. 265.

Our conclusion is that the bequest under consideration amounts merely to a dry trust and Frances Fitch Allen is entitled to the legacy free from any trust.

*James Harris and Irving Champlin,* for complainants.

*Mary A. Greene, Lewis A. Waterman, Waterman, Curran & Hunt, and Robert S. Emerson,* for various respondents.